THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GERALD BURSON, Defendant-Appellant.

Third District    No. 79-498

Opinion filed November 13, 1980.

Robert Agostinelli and Peter Carusona, both of State Appellate Defender's Office, of Ottawa, for appellant.

Bruce W. Black, State's Attorney, of Pekin (John X. Breslin and Kenneth A. Wilhelm, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Following a jury trial the defendant, Gerald L. Burson, was convicted of driving while his license was revoked and was sentenced to a six-month term of imprisonment.

Prior to trial, the defendant moved to suppress certain statements he made to Richard Higgs, a police officer for the city of Pekin, Illinois, and the arresting officer in this case. The defendant's motion was denied in part and certain of the statements were admitted into evidence. On appeal the defendant contends that the admission of these statements into evidence violated his constitutional rights under the guidelines set forth in *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 88 S. Ct. 1602. In addition he contends that he was denied his right to a fair trial because of allegedly improper and prejudicial trial tactics employed by the prosecutor.

The following facts, relevant to the issues raised on appeal, were adduced at trial. The defendant was ticketed for driving while his license was revoked, in violation of section 6—303 of the Illinois Vehicle Code (Ill. Rev. Stat. 1979, ch. 95½, par. 6—303). Following opening arguments, the jury was advised that a stipulation had been entered between the parties that on March 11, 1979, the date of the instant offense, the defendant's license was revoked and that the defendant was aware of said revocation. Consequently, the only question at trial was whether the defendant was driving at the time in question.

The evidence presented at trial was conflicting. Officer Richard Higgs, the sole State witness, testified that he saw the defendant driving. The defendant and three other witnesses testified that the defendant had been a passenger in the automobile and that the defendant's girlfriend, Marilyn Reader, had been the driver.

Officer Higgs testified that on March 11, 1979, at approximately 7:55 p.m., while parked in a marked squad car, he observed the defendant's car proceeding eastbound on Koch Street in Pekin, Illinois. All parties agree that it was dark at the time. According to Officer Higgs' testimony, the defendant, whom the officer recognized, was the only person in the car.

Knowing that the defendant's license was revoked, Officer Higgs decided to follow the car. He followed the defendant's automobile as it turned onto Hoff Street from Koch, proceeded two blocks north on Hoff, turned right onto Herget Street and parked illegally on the left hand side of the road in front of 243 Herget Street. Higgs indicated that he never lost sight of the vehicle, although the defendant's car was stopped before Higgs pulled up alongside it. At no time did Officer Higgs turn on his red lights or his siren.

Higgs, who was two feet away from the defendant's car told the defendant to come over to the squad car. When the defendant did so, Higgs told him to get in the front seat of the car. A conversation then took place between them. It is this conversation and specifically one statement made by Higgs during the course of the conversation which the defendant attempted to suppress. The basis of his motion was that Higgs failed to advise him of his *Miranda* rights prior to engaging in the conversation or interrogation, as the defendant characterizes the dialogue.

Officer Higgs was the sole witness at the hearing on the defendant's motion to suppress. He testified that when the defendant first entered the squad car he indicated to Higgs that he wasn't doing anything and that he had merely been sitting in the car. The defendant stated that he had been to a funeral and was driving from "Peggy's," an area tavern, to change clothes. Officer Higgs asked why Marilyn Reader, the defendant's girl-friend with whom he lived at the Herget Street address, was not driving the car. The defendant reportedly stated that Marilyn was busy, but did not indicate where she was. The defendant was not advised that he was under arrest nor were *Miranda* warnings given prior to the following exchange. Officer Higgs said to the defendant: "Now, Jerry, you know better than to drive that car." According to the officer's testimony, the defendant responded by saying: "Yes, I know but can't you give me a break? The last time I got picked up they said they would send me to Vandalia." Officer Higgs then advised the defendant that there was no possible way he could give him a break and that the defendant was under arrest.

Following arguments of counsel, the trial court ruled that only the defendant's statement in response to the officer's question concerning the whereabouts of Marilyn Reader should be suppressed. The court reasoned that although the defendant had been deprived of his freedom in a

significant way when he was told to get into the squad car, the officer's statement to the defendant to the effect that the defendant knew better than to be driving did not constitute interrogation.

It is this ruling of the trial court that the defendant challenges on appeal. He contends that the statement made by Officer Higgs to the effect that the defendant knew better than to be driving was interrogation and, as such, should have been suppressed. We agree.

■■ The fifth amendment of the United States Constitution serves to protect persons, in all settings in which their freedom of action is curtailed in any significant way, from being compelled to incriminate themselves. Consequently, statements obtained from a person as a result of interrogation while the individual is in custody or otherwise deprived of his freedom of action in any significant way are admissible only if *Miranda* warnings precede the interrogation and the directives set forth therein are followed or knowingly waived. *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 88 S. Ct. 1602.

■■ The trial court in the instant case was correct in finding that the defendant's presence before a uniformed police officer in a squad car in which all of the doors were closed was a significant deprivation of his freedom. See *People v. Zach* (1979), 77 Ill. App. 3d 17, 395 N.E.2d 758, and *People v. Kennedy* (1978), 66 Ill. App. 3d 267, 383 N.E.2d 713.

The question then becomes whether the statement made by Officer Higgs to the defendant—"Now, Jerry, you know better than to drive that car"—constituted interrogation. We hold that it did as the functional equivalent of express questioning recently defined by the United States Supreme Court in *Rhode Island v. Innis* (1980), ___ U.S. ___, ___, 64 L. Ed. 2d 297, 307-08, 100 S. Ct. 1682, 1689-90:

> "We conclude that the Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation."

The words used by Officer Higgs in the present case most certainly constituted words which Higgs should have known were reasonably likely to elicit an incriminating response. The words posited the guilt of the defendant as fact while attempting to elicit comments directed toward why the defendant committed the act. In the context of this case, where the officer knew the defendant on a first-name basis and they were alone in the officer's squad car, the tactics used by Higgs constituted the type of psychological ploy considered by the court in *Miranda* to be a subtle form of interrogation. (*Rhode Island v. Innis* (1980), ___ U.S. ___, ___, 64 L. Ed. 2d 297, 306-07, 100 S. Ct. 1682, 1688-89; *Miranda v. Arizona* (1966), 384 U.S. 436, 450, 457-58, 16 L. Ed. 2d 694, 709-10, 713-14, 86 S. Ct. 1602, 1615, 1618-19.) For this reason, we conclude that the trial court erred in not suppressing all statements made by the defendant to Officer Higgs before *Miranda* warnings were given at the police station.

We note that the State's argument that no interrogation took place because it was not needed to establish probable cause for the defendant's arrest is fallacious. In most situations, as is true in the instant case, probable cause to arrest a suspect exists prior to the type of interrogation that invokes *Miranda* warnings. Interrogation is normally not needed to establish probable cause to arrest but is most often utilized to establish evidence of the suspect's guilt which can be used at trial.

Because our decision that the trial court erred in not fully allowing the defendant's motion to suppress requires a reversal of the defendant's conviction and a remand for a new trial, we need not address the additional issues raised by the defendant in this appeal. Accordingly, the judgment of the Circuit Court of Tazewell County is reversed, and this cause is remanded for a new trial.

Reversed and remanded.

ALLOY, P. J., and SCOTT, J., concur.